UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY E. OWEN and SUSAN MARIE OWEN, each individually and the marital community composed thereof,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KITSAP, et al.,<br><br>Defendants. | CASE NO. C07-5044BHS<br><br>ORDER GRANTING DEFENDANT KITSAP COUNTY, SHERIFF STEPHEN BOYER AND JUDITH BOYER, AND LT. EARL SMITH AND JANE DOE SMITH'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Kitsap County, Sheriff Stephen Boyer and Judith Boyer, and Lt. Earl Smith and Jane Doe Smith's ("moving Defendants") Motion for Summary Judgment (Dkt. 88). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Unless otherwise indicated, the following facts are undisputed or taken in the light most favorable to Plaintiffs:

ORDER – 1

Ms. Owen is the president and sole shareholder of Beltane Enterprises, Inc. ("Beltane"). Dkt. 96 at 1. Mr. Owen is an employee and creative director of Beltane. *Id*. Beltane offers access to internet websites containing digital imagery and writings. *Id.* at 2. Beltane owns and operates an internet website located at www.houseofgord.com. Dkt. 1 at 4. The website has a "Members Area" that is accessible only after paying a fee electronically or by sending payment to an address in Seattle, WA. Dkt. 96 at 2.

Beltane retains the services of models to pose for creation of digital imagery for display on www.houseofgord.com ("the website"). *Id.* Models are occasionally retained to pose at a residence owned by Mr. Owens and located at 9854 West Kingston Road in Kingston, Washington ("the West Kingston residence"). Dkt. 1 at 5. According to Plaintiffs, models present at the West Kingston residence were not visible from public roadways or other public localities, and the West Kingston residence was not open to the public while models were present. Dkt. 96 at 2-3

In December of 2004, Mr. Owen filed a lawsuit to enjoin the construction of a high school on a site located in northern Kitsap County. Dkt. 96 at 3. Plaintiffs contend that "[a]s a result of this lawsuit, there has been significant and lingering animosity between the parties." Dkt. 1 at 5.

On or about April 29, 2005, Eugene J. Medina, Superintendent for the North Kitsap School District, contacted Lt. Smith and reported his belief that photographs for the website were being produced at 7881 NE Hailey Loop ("the Hailey Loop location"), within 1,000 feet of a school. *Id.* at 5-6. According to the moving Defendants, Mr. Medina notified Lt. Smith that the residence was located just off of West Kingston Road and reported his belief that photographs posted on www.houseofgord.com were taken at the Hailey Loop location. Dkt. 91 at 1.

Lt. Smith visited the website's preview section, which was accessible to the public, unlike the "Members Area" section. Dkt. 91 at 2.

ORDER – 2

Lt. Smith also spoke with Chad Lewis, a reporter, who told Lt. Smith that he had interviewed Mr. Owen and that he had observed pictures of the West Kingston residence on www.houseofgord.com. *Id.* at 3. Chief Deputy Prosecutor Jahns and Lt. Smith then prepared a complaint for search warrant alleging probable cause to believe that evidence of a violation of Kitsap County Code § 10.52.30 would be found at the West Kingston residence. Dkt. 1 at 7.

A search warrant for the West Kingston residence was issued, and the warrant was executed on April 29, 2005. *Id.* at 8. Lt. Smith participated in the execution of the search warrant at the West Kingston residence. Dkt. 91 at 4. While executing the warrant, Lt. Smith made contact with Mr. Owen, whom he recognized from photographs he had seen on www.houseofgord.com. *Id.* at 4. Mr. Owen contends that during the search he was detained outside and was not permitted to leave, re-enter the home, or contact an attorney. Dkt. 96 at 3. Mr. Owen contends that he was required to answer questions, that his request to contact an attorney was ignored, and that he was not given *Miranda* warnings. Dkt. 1 at 9; Dkt. 96 at 3.

Lt. Smith contests this version of events. According to Lt. Smith, Mr. Owen accompanied law enforcement during much of the search and spoke with his attorney on the phone while officers executed the search warrant. Dkt. 91 at 4. Lt. Smith concedes that he did not give Mr. Owen *Miranda* warnings because he believed that no such warnings were necessary because Mr. Owen was not placed under arrest. *Id.*

On or about August 4, 2005, a criminal complaint was filed against Plaintiffs, alleging that they operated a "sexual encounter center" at the West Kingston residence. Dkt. 1 at 9. On January 18, 2006, the criminal charges were dismissed for insufficiency of evidence. *Id.* at 10. Kitsap County Prosecutor Russell Hauge moved for reconsideration of the order of dismissal, and the motion was denied. Mr. Hauge also appealed the dismissal but ultimately dismissed the appeal. *Id.*

ORDER – 3

On January 31, 2007, Jeffrey E. Owen and Susan Marie Owen, husband and wife, filed suit in federal court for violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and for malicious prosecution. Dkt. 1.

On March 24, 2008, the Court dismissed Eugene J. Medina, Leslie F. Alber, and the North Kitsap School District. Dkt. 83.

On April 10, 2008, the moving Defendants moved for summary judgment. Dkt. 88. Plaintiffs sought a continuance of the motion in order to conduct additional discovery before responding to the motion. Dkt. 97. The motion was granted, and the Court established a briefing schedule to allow the parties to provide supplemental briefing to address additional information obtained through discovery. Dkt. 111. Plaintiffs did not file a supplemental response.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

ORDER – 4

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### III. STANDARDS

As to the moving Defendants, Plaintiffs allege violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under Article 1, Sections 3 and 7 of the Washington State Constitution.

**A.    SECTION 1983**

Section 1983 provides for the redress of constitutional rights violations:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The elements of a Section 1983 claim are (1) a violation of rights protected by the Constitution or by federal statute, (2)

ORDER – 5

proximately caused (3) by conduct of a "person" (4) acting under color of state law. *Id.* Plaintiffs must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

## B. THE FOURTH AMENDMENT

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

To determine whether a search warrant is supported by probable cause, courts consider the totality of the circumstances. *Illinois*, 462 U.S. at 238. A warrant is supported by probable cause if an affidavit in support of the warrant, when viewed in a "non-technical, common sense, and realistic manner" provides a "substantial basis" for finding a "fair probability" that the search would unearth evidence of a crime. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1230 (9th Cir. 2006). The role of the reviewing court is to determine whether the court issuing the warrant had a substantial basis for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

When plaintiffs challenge the sufficiency of a warrant based upon the assertion of omissions of the officer seeking the warrant, courts in the Ninth Circuit apply the rule announced in *Franks v. Delaware*, 438 U.S. 154 (1978). *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997) (though developed in the criminal context, the *Franks* standard defines the scope of qualified immunity in civil rights actions).

## C. SUBSTANTIVE DUE PROCESS

The Fifth and Fourteenth Amendments to the United States Constitution prohibit the "depriv[ation] of life, liberty, or property, without due process of law." U.S. Const. amend V; U.S. Const. amend XIV. The Due Process Clause "cover[s] a substantive sphere, . . . barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). This substantive component protects individuals from "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 846.

## D. QUALIFIED IMMUNITY

Government officials who are sued in their official capacities have qualified immunity from suit absent evidence of incompetence or knowing violation of the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule shields government officials from suit in order to afford relief to plaintiffs without unduly hindering officials' performance of their governmental duties. *Id.* Qualified immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the first place. *See Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

The defense of qualified immunity has three steps. First, there must be a violation of a constitutional right, as explained in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At this stage, the facts are viewed in the light most favorable to the injured party. *Id.* Absent such a violation, there is no need to pursue the remaining qualified immunity analysis. *Id.*

Second, the right must be so clearly established that a reasonable officer would be on notice of its existence and parameters. *Id.* at 199; *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). This burden rests with the plaintiff. *Romero*, 931 F.2d at 627.

The plaintiff may establish that the conduct at issue was previously held unlawful or that the unlawfulness is apparent. *See Anderson*, 483 U.S. at 640.

Third, the officer must demonstrate that a reasonable officer could have believed that the conduct was lawful. *See Romero*, 931 F.2d at 627. Qualified immunity is "designed to spare a defendant not only of unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Devereaux*, 218 F.3d at 1052.

### E. WASHINGTON CONSTITUTION

Article 1, Section 3 of the Constitution of the State of Washington provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Wash. Const. art. 1, § 3. Article 1, Section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art. 1, § 3.

## IV. DISCUSSION

The moving Defendants seek summary judgment on all claims on several grounds. First, the moving Defendants contend that Plaintiffs fail to allege personal participation by Defendants Judith Boyer and Jane Doe Smith. Second, Lt. Smith seeks summary judgment as to the alleged Fourth Amendment violation, contending that his actions were supported by probable cause and that he is entitled to qualified immunity. Third, the moving Defendants contend that summary judgment is proper as to Section 1983 claims against Sheriff Boyer because there is no allegation of personal participation to support such claims. Fourth, the moving Defendants contend that Plaintiffs offer no factual support for alleged violations of the Fifth and Fourteenth Amendments to the United States Constitution and under Article 1, Sections 3 and 7 of the Washington State Constitution. Finally, the moving Defendants contend that Plaintiffs fail to state a claim against Kitsap County.

ORDER – 8

## A. FOURTH AMENDMENT

The moving Defendants seek summary judgment as to Plaintiffs' Fourth Amendment claims against Lt. Smith and Sheriff Boyer.

### 1. Lt. Smith

The moving Defendants contend that dismissal of Plaintiffs' claim for violation of their Fourth Amendment rights is proper as to Lt. Smith because Lt. Smith's actions were supported by probable cause or, alternatively, that Lt. Smith is entitled to qualified immunity. Dkt. 88 at 7-12.

Kitsap County Code § 10.52.030 provides that "adult entertainment uses . . . shall not be permitted [w]ithin one thousand feet of . . . [s]chools, up to and including the twelfth grade and their adjunct play areas." Kitsap County Code § 10.52.030(b)(2). "Sexual encounter centers" are designated as adult entertainment uses. Kitsap County Code § 10.52.020(i). A sexual encounter center is defined as follows:

> a business or commercial enterprise that, as one of its principal business purposes, offers for any form of consideration: (1) physical contact in the form of wrestling or tumbling between persons of the opposite sex; or (2) activities between male and female persons or persons of the same sex when one or more of the persons is in a state of nudity or seminude.

Kitsap County Code § 10.52.010(l).

Lt. Smith, in seeking a warrant to authorize the search for evidence of a violation of Kitsap County Code § 10.52.30, prepared a complaint summarizing the facts as follows:

> On April 29th, 2005 I received a phone call from North Kitsap School Superintendent Gene Medina about a possible violation of county ordinance 10.52 pertaining to adult entertainment. County Ordinance 10.52.010 (1) defines "sexual encounter center" as a business Or commercial enterprise that, as one of its principal business purposes, offers for any form of consideration: (1) physical contact in the form of wrestling or tumbling between persons of the opposite sex; or (2) activities between male and female persons or persons of the same sex when one or more of the persons is in a state of nudity or seminude. County Ordinance 10.52.030 restricts a "sexual encounter center" from being within 1000 feet of a school. He advised me that a residence located at what he believes is 7881 NE Miss Hailey Loop (off of West Kingston Road), KINGSTON, WA 98346 is operating a sex bondage internet site from this residence.

ORDER – 9

> Gene Medina advised me that he believes the photographs that are being produced are also being created at this address, which is within 1000 feet of Spectrum School. I went to the website free section and observed a two story residential home that had females photographed in various bondage positions. I observed some of the photographs had females partially nude showing their breast[s]. I also observed some of the images on the website had the genitalia covered. In some of the photographs there were two persons engaged in activity. In the photographs I observed chains, pulleys, [and] various restraints used for producing these photographs. I later talked with reporter Chad Lewis from the Bremerton Sun. Chad Lewis advised me that his newspaper is doing a story about this residence and he went and talked with the owner Jeffrey H. Owens yesterday. Chad Lewis stated that he had gone to the website and observed photographs. Chad Lewis advised that the house that he saw on the website is the same house where he went to interview Jeffrey Owens, located at 9854 WEST KINGSTON ROAD, Kingston, WA 98346. Chad Lewis estimated that the residence is located within $1/10^{th}$ of a mile from Spectrum School (which would be less than 1000 feet).

Dkt. 91-2, Exh. A at 4-5. In contesting the sufficiency of the warrant, Plaintiffs offer two theories: Plaintiffs contend that the facts offered by Lt. Smith in support of the warrant do not provide a substantial basis for finding probable cause and that the facts alleged by Lt. Smith contain material omissions.

### a. **Lack of Probable Cause**

Plaintiffs contend that Lt. Smith's complaint did not provide a substantial basis for finding of probable cause for several reasons. Plaintiffs dispute whether Mr. Lewis's interview of Mr. Owens took place at the West Kingston residence. *See* Dkt. 96 at 3 (Mr. Owens contends he was interviewed at a restaurant located several miles away from the West Kingston residence.). Whether the information in the search warrant complaint is ultimately untrue is not the appropriate inquiry in determining whether Lt. Smith had probable cause. Rather, the role of this Court is to examine whether information known at the time provided a substantial basis for finding probable cause. Absent evidence that Lt. Smith knew the falsity of Mr. Lewis's statement as to the location of the interview, such evidence does not undermine the finding of probable cause.

Plaintiffs also contend that Lt. Smith's reliance on statements from Messrs. Medina and Lewis was insufficient because neither witness "observed, or even heard that

ORDER – 10

persons had entered the reported residence and paid any form of consideration in exchange for services of a 'sexual encounter center' as defined by Kitsap County Code § 10.52.010(1)" and because Lt. Smith did not visit either the Hailey Loop location or the West Kingston Residence before seeking a search warrant. Dkt. 95 at 11-12. The Court disagrees. Lt. Smith relied on Mr. Medina's statement that he believed that photographs posted on www.houseofgord.com were taken at the Hailey Loop location, Mr. Lewis's statement that the house depicted in some of the pictures on the website was the West Kingston residence, Mr. Lewis's estimate that the West Kingston residence was located within 1000 feet of a school, and his own visit to www.houseofgord.com, which revealed pictures that may have evidenced a "sexual encounter center" as defined by Kitsap County Ordinance § 10.52.010 and included an area requiring payment for membership. Dkt. 91.

Finally, Plaintiffs contend that Lt. Smith lacked probable cause because he did not attempt to determine whether the owners of either residence had a license to operate an adult business. *Id.* at 12. Plaintiffs appear to blur the lines between Kitsap County Ordinance § 10.52.050, which prohibits operation of an adult entertainment business without a license, and Kitsap County Ordinance § 10.52.030, which prohibits adult entertainment uses within 1,000 feet of schools.

Officers need not possess evidence of every element required for a conviction in order to establish probable cause. *Rodis v. City and County of San Francisco*, 499 F.3d 1094, 1099 (9th Cir. 2007). The Court concludes, viewing the totality of the circumstances, that the facts upon which the search warrant was based were sufficient to create a fair probability that a search of the West Kingston residence would unearth evidence of a crime and that Plaintiffs fail to state a constitutional violation. Moreover, it is instructive that Kitsap County Deputy Prosecutor Jefferey J. Jahns and the Honorable Marilyn G. Paja, Kitsap County District Court Judge, both approved the complaint for

ORDER – 11

search warrant. Accordingly, the Court concludes that a reasonable officer could have believed that Lt. Smith's conduct was lawful.

### b. Omission of Material Facts

Plaintiffs also contend that the complaint for search warrant contained material omissions. In order to survive a motion for summary judgment on qualified immunity grounds, plaintiffs "must 1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred." *Liston*, 120 F.3d at 973. If the plaintiffs succeed, the case should proceed to trial. *Id.* If not, qualified immunity is proper. *See id.* at 975. Whether the omission was intentional or reckless is generally a question for the trier of fact while the question of materiality is for the court. *Id.* at 974.

Plaintiffs contend that Lt. Smith omitted several material facts from the complaint that *could* have affected whether the warrant issued. Specifically, Plaintiffs find fault with Lt. Smith's failure to disclose that according to Mr. Medina, Plaintiffs told Mr. Lewis they were not operating a business from the West Kingston residence, "Medina was a motivated citizen informant providing information for the search warrant who previously had been involved in a protracted lawsuit by Plaintiff Jeffrey Owen," that the website was owned by Beltane, and that the business address of Beltane is neither of the addresses listed in the complaint. Dkt. 95 at 12; *see also* Dkt. 73, Exh. A at 3. The Court does not find these omissions material. The fact that the owner of the property subject to a search denied that a crime had occurred would not alter a magistrate judge's probable cause determination. Moreover, Plaintiffs do not allege that Lt. Smith knew of the tension between Messrs. Medina and Owen, and the only evidence in the record suggests that Lt. Smith was unaware of the previous lawsuit involving Mr. Medina and the Owens. Dkt. 102 at 2. The Court therefore concludes that Lt. Smith is entitled to qualified immunity on Plaintiffs' claim that material facts were omitted from Lt. Smith's complaint for search warrant.

**2.     Sheriff Boyer**

The moving Defendants seek summary judgment as to all claims against Sheriff Stephen Boyer, contending that he is sued only in his official capacity as sheriff and not because he was personally involved in the alleged constitutional rights violation. Dkt. 88 at 12-13. Sheriff Boyer contends that while he was "generally aware" of the investigation of the Owens, he was not familiar with the particulars of the investigation, was not involved in the investigation, and was not involved in the application for or execution of the search warrant. Dkt. 90 at 1-2. Having determined that there is no genuine issue of material fact as to whether the warrant was supported by probable cause and that Lt. Smith is entitled to qualified immunity as to Plaintiffs' contention that the complaint for search warrant contained material omissions, the Court need not address whether Plaintiffs have stated a Fourth Amendment violation with respect to Sheriff Boyer. Because the alleged Fourth Amendment violation by Sheriff Boyer is premised on the same factual allegations underlying Plaintiffs' claims against Lt. Smith, the Court concludes that Sheriff Boyer is entitled to summary judgment on this claim. As explained more fully below, the Court also concludes that Sheriff Boyer is also entitled to summary judgment on Plaintiffs' Fourth Amendment claim because Plaintiffs fail to create a genuine issue of material fact as to whether Sheriff Boyer was personally involved in any constitutional rights violation.

**B.     OTHER SECTION 1983 CLAIMS AGAINST SHERIFF BOYER**

In limited circumstances, a person can be subject to liability under Section 1983 for the acts of others. *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007). Supervisors can be held liable for their own action or inaction in the training, supervision, or control of subordinates, acquiescence in subordinates' unconstitutional conduct, or for conduct displaying "reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). While there is no respondeat superior liability under Section 1983, a supervisor may be held responsible for the constitutional violations of

ORDER – 13

1 | subordinates if the supervisor (1) participated in, (2) directed, or (3) knew of the
2 | violations and failed to prevent the unconstitutional conduct. *Id.*; *Taylor v. List*, 880 F.2d
3 | 1040, 1045 (9th Cir. 1989); *see also Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)
4 | ("A person 'subjects' another to the deprivation of a constitutional right, within the
5 | meaning of section 1983, if he does an affirmative act, participates in another's
6 | affirmative acts, or omits to perform an act which he is legally required to do that causes
7 | the deprivation.").

In this case, Plaintiffs seek to impose liability on Sheriff Boyer because (1) Mr. Medina's email to Lt. Smith states that Mr. Smith forwarded his concerns to Sheriff Boyer and (2) "it could be surmised that Medina . . . could have informed Sheriff Boyer of Jeffrey Owen's lawsuit against the North Kitsap School District." Dkt. 95 at 21. Mere suppositions are insufficient to withstand summary judgment. Plaintiffs fail to create a genuine issue of material fact as to whether Sheriff Boyer participated in, directed, or knew of a violation of constitutional rights, and Sheriff Boyer is therefore entitled to summary judgment on Plaintiffs' Section 1983 claims.

## C. KITSAP COUNTY

The moving Defendants seek summary judgment as to all claims against Kitsap County ("the County") on the grounds that the complaint does not contain any allegations implicating the County. Dkt. 88 at 13.

The language of Section 1983 is expansive and does not expressly incorporate common law immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980). Municipalities are subject to suit under Section 1983. *Monell*, 436 U.S. at 690. Municipalities are not liable merely for employing tortfeasors, and respondeat superior is an insufficient basis for establishing municipal liability. *Id.* Rather, plaintiffs must establish that a policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166

ORDER – 14

(1993). This requirement distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

If an employee commits a constitutional violation pursuant to a longstanding practice or custom, the custom allegedly causing the rights violation need not receive municipal ratification in order to serve as the basis for a claim under Section 1983. *Monell*, 436 U.S. at 691. Plaintiffs contending that they were singled out for unusual treatment do not establish the presence of a longstanding practice or custom and must instead demonstrate that the person causing the violation has final policymaking authority, that the final policymaker ratified the rights violation, or that the final policymaker acted with deliberate indifference to a subordinate's constitutional violations. *Christie*, 176 F.3d at 1235.

In this case, Plaintiffs' response indicates that claims against the County are premised on claims against Sheriff Boyer and Kitsap County Prosecutor Russell Hauge and contends that "[t]o claim that Boyer and Hauge are not the county officials responsible for establishing final policy with respect to law enforcement practices and criminal prosecutions for Kitsap County is disingenuous." Dkt. 95 at 21-22. In the response, Plaintiffs also "request the ability to amend their Complaint to make their claims against Kitsap County clearer." Dkt. 95 at 22. Plaintiffs' response to the motion is inadequate. Plaintiffs fail to identify a longstanding practice or custom or offer any facts or legal authority that would assist the Court in evaluating their claims. Furthermore, Plaintiffs have not moved to amend their complaint and have not proffered any amendments that would salvage their Section 1983 claims against the County. Kitsap County is therefore entitled to summary judgment on Plaintiffs' Section 1983 claims.

**D.    SUBSTANTIVE DUE PROCESS**

Courts are reluctant to expand the reach of substantive due process principles. Therefore, courts will not employ the generalized concept of substantive due process if a

particular constitutional amendment provides an explicit source of constitutional protection. *Lewis*, 523 U.S. at 842.

In this case, Plaintiffs dispute whether their substantive due process claims are more appropriately analyzed under the Fourth Amendment:

> It is true that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *Lewis*, 523 U.S. at 1056. However, the claims of the Plaintiffs from a substantive due process perspective are not that a search in fact occurred, but rather that the Defendants invoked the power of a governmental body for an improper purpose. It is the Defendants' exercise of power without any reasonable justification in the service of a legitimate governmental objective of which the Plaintiffs have complained. Moreover, while "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," *id.* at 846, oppressively exercising governmental power in pursuit of an institutional vendetta should certainly be found within this category. This is especially true in cases where, as here, the oppressive exercise of governmental power is the result of an individual's exercise of his right to petition for redress of grievances in keeping with the First Amendment.

Dkt. 95 at 15. Plaintiffs fail to point to constitutional rights, beyond those protected by the Fourth Amendment, allegedly violated by Defendants or to demonstrate that their claims are not subject solely to analysis under the Fourth Amendment. Summary judgment is therefore proper as to Plaintiff's substantive due process claim.

E.   **VIOLATION OF WASHINGTON STATE CONSTITUTION**

The moving Defendants also seek dismissal of Plaintiffs' claim for violation of the Washington State Constitution, Article 1, Sections 3 and 7, but do not offer separate analysis of such claim. Dkt. 88 at 9. Section 1983 itself does not entitle Plaintiffs to recover for violations of state constitutional rights. *See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). Therefore, Plaintiffs' Section 1983 claim for violation of the Washington State Constitution is dismissed.

## F. SPOUSE DEFENDANTS

Because the Court concludes that Plaintiffs' claims against Jane Doe Smith and Judith Boyer are premised on claims against Lt. Smith and Sheriff Boyer, the Court concludes that dismissal of the spouse Defendants is proper.

## V. ORDER

Therefore, it is hereby

**ORDERED** that Defendant Kitsap County, Sheriff Stephen Boyer and Judith Boyer, and Lt. Earl Smith and Jane Doe Smith's Motion for Summary Judgment (Dkt. 88) is **GRANTED**, and Defendants Stephen A. Boyer, Judith Boyer, Earl Smith, Jane Doe Smith, and Kitsap County are **DISMISSED**.

DATED this 23rd day of July, 2008.

BENJAMIN H. SETTLE
United States District Judge

ORDER – 17